**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| Jerome R. Hodson, | ) CASE NO.:1:07CV 02085 |
| | ) |
| Plaintiff, | ) |
| vs. | ) JUDGE: O' Malley |
| | ) |
| | ) MAGISTRATE: Baughman |
| Javitch, Block, & Rathbone, | ) |
| | ) |
| Defendant. | |

**MEMORANDUM IN SUPPORT OF
DEFENDANT'S MOTION TO COMPEL ARBITRATION**

**I.     Statement of Facts**

In 2004, Plaintiff Jerome Hodson applied for two separate Capital One credit card accounts via on-line application. He filled out the first, regarding account # XXXX-XXXX-XXXX-9165, on March 21, 2004.[1] The application requested personal information about Hodson, including his full name,[2] date of birth,[3] and social security number.[4] It also requested information about his prior and current address. For his prior address, Hodson listed:

> 4200 Westbrook Dr., Apt. #1
> **Brooklyn, OH** 44114-1217[5]

As, and for his current address, he listed:

> 101 Terrace Ln.
> **Cleveland, OH** 44114[6]

---

[1] Exhibit D – online application for account # xxxx-xxxx-xxxx-9165, attached hereto as if fully incorporated herein.
[2] Exhibit A, at p. 2 ("Jerome R. Hodson)..
[3] Id. ("XX/XX/1947).
[4] Id. ("XXX-XX-1289").
[5] Exhibit A, at p. 3.
[6] Exhibit A, at p. 3.

1

Hodson filled out the second online application, regarding account # XXXX-XXXX-XXXX-0627, on October 28, 2004.[7] Again, he listed all pertinent personal information, including his then current address of:

> 101 Terrace Ln.
> **Cleveland, OH** 44114-3207[8]

The customer agreements governing the use of each credit card contained arbitration clauses; which encompass the following identical definitions and terms:

> The words "we," "us" and "our" mean Capital One Bank and its successors, assigns, agents and/or **authorized representatives.**[9]
>
> * * *
>
> You and we agree that either you or we may, at either party's sole election, require that any Claim (as defined below) be resolved by binding arbitration.[10]
>
> * * *
>
> "Claim" means any claim, controversy or dispute of any kind or nature between you and us.
> A. This definition includes, without limitation, any Claim that in any way arises from or relates to: * * * **any billing or collections matters relating to your account.**[11]

Hodson subsequently derived benefit from the use of each credit card account; and defaulted on the same in 2005.[12]

---

[7] See Defendant's Answer, at Exhibit C at p. 12.
[8] See Defendant's Answer, at Exhibit C, at p. 14.
[9] See Defendant's Answer, at Exhibits A, at p. 25, Exhibit B, at p. 13.
[10] See Defendant's Answer, at Exhibits A, at p. 27, Exhibit B, at p. 15.
[11] Ids.
[12] See Defendant's Answer, at Exhibit A, at p. 23, Exhibit B, at p. 12.

2

JB&R filed the first lawsuit in the Cleveland Municipal Court on June 15, 2006[13] for account # XXXX-XXXX-XXXX-9165, due and owing by Plaintiff Hodson for $2,747.76.[14] On January 9, 2007, the Court granted default judgment in favor of Capital One, at which time JB&R initiated a wage garnishment against Hodson.[15] Between April and June of 2007, garnishee Jay Auto Group forwarded $1,112.59 to the Court.[16] On April 10, 2007, Hodson, through counsel, moved the court to vacate the judgment, because Capital One had apparently filed the action in the wrong venue.[17] JB&R responded by asking the court to vacate judgment,[18] and to release the garnished funds.[19] In June of 2007, the Court released the garnished funds back to Hodson.[20] Neither JB&R nor Capital One ever possessed or exercised control over the garnished funds.[21]

JB&R filed a second lawsuit, on behalf of Capital One, against Hodson in the Cleveland Municipal Court for his default of account number XXXX-XXXX-XXXX-0627, due and owing in the amount of $752.79.[22] For his answer, Hodson alleged as one of his affirmative defenses that the

---

[13] Exhibit E – Certified Copy of Cleveland Municipal Court Case No. 06 CFV 16165.  It must be noted at this time that Plaintiff's Second Cause of Action is time-barred, as the filing of the action occurred more that one year prior to the filing of this lawsuit.  See Answer, Affirmative Defense ¶ If a consumer's claim is predicated upon the wrongful filing of a collection suit, the Ninth Circuit Court of Appeals has held that the statute of limitations begins to run on the date that such suit is filed, rather than on the date that it is determined to be wrongful. *Naas v. Stolman*, 130 F.3d 892 (9th Cir. 1997).  Other Courts have held that the statute begins to run on the date of service. *Johnson v. Riddle*, 305 F.3d 1107 (10th Cir. 2002)(stating that the statute runs for purposes of an allegation of a wrongful filing of a suit under the FDCPA when the complaint is served upon the defendant).  Further, the Southern District of New York considered whether the maintenance of an allegedly wrongful lawsuit could constitute a "continuing violation" of the FDCPA, which would therefore continue to toll the date upon which the one year statute begins to run.  *Calka v. Kucker, Kraus & Bruh, LLP*, unreported, 1998 WL 437151 (S.D.N.Y. 1998).  The court rejected this theory, and instead held that the statute begins to run when the consumer is put on notice as to the wrongfulness of the collection activity; in that matter, the court held that the date the statute began to run was the day the complaint was filed.  *Id.* at *3.  As the first suit was filed on 6/15/06, and service perfected 6/.20/06; under either viewpoint, this cause of action is time barred.
[14] See Complaint, at Exhibit B.
[15] See Complaint, at ¶ 10; see also Exhibit E, attached hereto..
[16] Exhibit E.
[17] Exhibit E.
[18] Exhibit E.
[19] Exhibit E.
[20] Exhibit E.
[21] Exhibit E.
[22] See Complaint, at Exhibit A.

3

action was filed in the wrong venue.[23] JB&R therefore moved to voluntarily dismiss the action without prejudice.[24]

Hodson filed this action against JB&R, alleging violations of the Fair Debt Collection Practices Act (FDCPA), and the Ohio Consumer Sales Practices Act[25] ("OCSPA").[26] Specifically, he alleges that JB&R filed the two aforementioned collection actions in the Cleveland Municipal Court, despite his residence being in Brooklyn, Ohio; which thereby constitutes a "practice of suing consumers in distant and improper forums in violation"[27] of each Act.[28]

## II.  Law and Argument

JB&R acted at all times as Capital One's law firm in the aforementioned state court actions; constituting its "authorized representative," and acting at all times as its agent. Further, each claim arises from JB&R's conduct in effectuating collection activity of the accounts. Because JB&R and these claims are explicitly contemplated as being subject to the aforementioned arbitration agreements, JB&R hereby moves this Court to stay these proceedings, and compel this action to binding arbitration.

---

[23] Exhibit F –Certified Copy of Cleveland Municipal Court Case No. 07 CFV 4830.
[24] Exhibit F.
[25] It should be noted by this Court that the underlying transactions are specifically exempt from governance of the Ohio Consumer Sales Practices Act, as they were consummated between Hodson and Capital One, a federally chartered national bank. (See http://www2.fdic.gov/idasp/main_bankfind.asp; listing Capital One Bank with a FDIC Cert: 33954.) Because the CSPA specifically excludes transactions between "financial institutions," and their customers, the underlying transaction is exempt from governance. [25] *Lewis v. ACB Business Services,* 135 F.3d 389, 412 (6th Cir.1998); *Lamb v. Javitch, Block & Rathbone*, L.L.P., 2005 WL 4137786, *4 (S.D.Ohio Jan 24, 2005); See e.g., *Contimortgage Corp. v. Delawder*, 2001 Westlaw 884085, *2 (Ohio App. 4 Dist. 2001); *Bard v. Society Nat. Bank* (10th Dist. App. 1998), 1998 Westlaw 598092 ("the language . . . above makes clear, the statute does not simply exempt financial institutions from its provisions; rather, the statute excludes claims based upon *transactions* with financial institutions.") (emphasis added). Hence, JB&R cannot be held liable for a violation thereof.
[26] See Complaint.
[27] See Complaint, at ¶ 2.
[28] Hodson lives approximately ¼ mile outside of the Cleveland City boundary. It must further be noted that, as shown above, Hodson filled out on his application that he lived in Cleveland, OH. A further search of the United States Postal Service website also incorrectly states that he resides at a Cleveland address. (see www.usps.com).

**A.     Standard of Review**

At common law, parties to binding arbitration agreements could revoke their submission to same prior to any award being granted.[29] While arbitration awards were enforceable,[30] American courts in general demonstrated hostility toward ordering specific performance of an agreement to arbitrate, seemingly adopting a jealous notion held by the common law courts of England that arbitration agreements were nothing less than a drain on their own authority to settle disputes.[31]

Congress enacted the Federal Arbitration Act "to reverse the longstanding judicial hostility to arbitration agreements that had existed at English common law and had been adopted by American courts, and to place arbitration agreements upon the same footing as other contracts."[32] Section 2 of the FAA states in part that "a [written provision in any] contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof * * * shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."[33] The Supreme Court has noted that the FAA promotes a "'liberal federal policy favoring arbitration agreements,'"[34] and that the statute's reference in section 2 to transactions "involving commerce" demonstrates Congress' intent "to exercise [its] commerce power to the full."[35]

In recent history, the Supreme Court has confirmed that the FAA can be invoked to enforce the arbitration of federal statutory claims, unless Congress has otherwise "evinced an intention to

---

[29] *See Juhasz v. Costanzo,* 144 Ohio App.3d 756, 761 N.E.2d 679, 684-85 (2001); *Kelm v. Kelm,* 73 Ohio App.3d 395, 597 N.E.2d 535, 539 (1992).
[30] *see, e.g., Brennan v. Brennan,* 164 Ohio St. 29, 128 N.E.2d 89, 94 (1955) (noting that binding arbitration awards were held enforceable in Ohio, except where obtained by fraud or the like, at least as far back as 1835),
[31] *See Dean Witter Reynolds Inc. v. Byrd,* 470 U.S. 213, 219-220 n. 6, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985).
[32] *Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 24, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991).
[33] 9 U.S.C. § 2.
[34] *Gilmer* 500 U.S. at 25, 111 S.Ct. 1647, 114 L.Ed.2d 26; *quoting Moses H. Cone Mem. Hosp. V. Mercury Constr. Corp.,* 460 U.S. 1, 24 103 S.Ct. 927, 74 L.Ed.2d 765 (1983).
[35] *Allied-Bruce Terminix Cos. V. Dobson,* 513 U.S. 265, 277, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995).

preclude a waiver of judicial remedies" for such,[36] and to enforce any arbitration agreement which may be contained in an employment contract, other than an employment contract involving transportation workers.[37] The arbitral forum must "allow for the effective vindication" of a plaintiff's statutory claim,[38] but "so long as the prospective litigant effectively may vindicate its statutory cause of action in the arbitral forum, the statute will continue to serve both its remedial and deterrent function."[39]

In evaluating motions to compel arbitration, courts treat the facts as they would in ruling on a summary judgment motion, construing all facts and reasonable inferences that can be drawn therefrom in a light most favorable to the non-moving party.[40] But, courts are to examine the language of the contract in light of the strong federal policy in favor of arbitration.[41] Likewise, any ambiguities in the contract or doubts as to the parties' intentions should be resolved in favor of arbitration.[42]

### B. Hodson's claims are subject to binding arbitration agreements.

Section 3 of the Federal Arbitration Act ("FAA"), provides:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, **shall** on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.[43]

---

[36] *see Gilmer,* 500 U.S. at 26, 35, 111 S.Ct. 1647, 114 L.Ed.2d 26 (holding specifically that disputes arising under the ADEA may be submitted to arbitration)
[37] *See Circuit City Stores, Inc. v. Adams,* 532 U.S. 105, 119, 121 S.Ct. 1302, 149 L.Ed.2d 234 (2001); 9 U.S.C. § 1 (expressly excepting from the FAA's reach "contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce").
[38] *Floss v. Ryan's Family Steak Houses, Inc.,* 211 F.3d 306, 313 (6th Cir.2000)
[39] *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,* 473 U.S. 614, 637, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985).
[40] *See, Raasch v. NCR Corp.,* 254 F.Supp.2d 847 (S.D.Ohio 2003).
[41] *See Soler Chrysler-Plymouth,* 473 U.S. at 626, 105 S.Ct. 3346; *Arnold v. Arnold,* 920 F.2d 1269, 1281 (6th Cir.1990).
[42] *See Soler Chrysler-Plymouth,* 473 U.S. at 626, 105 S.Ct. 3346.
[43] 9 U.S.C. § 3 (2007) (emphasis added).

6

The Court must make a number of threshold determinations before compelling arbitration:

> When considering a motion to stay proceedings and compel arbitration under the Act, a court has four tasks: **first**, it must determine whether the parties agreed to arbitrate; **second**, it must determine the scope of that agreement; **third**, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable; and **fourth**, if the court concludes that some, but not all, of the claims in the action are subject to arbitration, it must determine whether to stay the remainder of the proceedings pending arbitration.[44]

Upon undertaking these four tasks, and after taking into consideration the liberal Federal policy favoring arbitration, this Court should find that the instant claims and parties thereto fit squarely within the boundaries of the arbitration clause, and should therefore stay the instant proceedings and compel the entire matter to binding arbitration.

1. ***The parties agreed to arbitrate.***

The determinative factor of whether an arbitration provision can be enforced to settle a dispute is the existence of a contract between the parties demonstrating that they intended for such to be the case.[45] That determination is made with reference to state-law contract principles.[46] Courts will not enforce an arbitration agreement when the parties did not agree to the clause.[47]

"Credit card agreements are contracts whereby the issuance and use of a credit card creates a legally binding agreement."[48] The Fifth District Court of Appeals of Ohio, in *Asset Acceptance LLC v. Davis*[49], held that a creditor need not produce a signed credit card application to prove the existence

---

[44] *Stout v. J.D. Byrider,* 228 F.3d 709, 714 (6th Cir.2000) (emphasis added); *see also Glazer v. Lehman Bros., Inc.,* 394 F.3d 444, 451 (6th Cir.2005).
[45] *See Floss,* 211 F.3d at 314.
[46] *Id.*; *citing Perry v. Thomas,* 482 U.S. 483, 492 n. 9, 107 S.Ct. 2520, 96 L.Ed.2d 426 (1987)); *Orcutt,* 199 F.Supp.2d at 750-51.
[47] *Ervin v. American Funding Corp.* (Claremont Cty.1993), 89 Ohio App.3d 519, 625 N.E.2d 635; *Estate of Lola Brewer v. Dowell & Jones, et al.* Cuyahoga App No. 80563 (2002).
[48] *Bank One, Columbus, N.A. v. Palmer* (1989), 63 Ohio App.3d 491, 493, 579 N.E.2d 284; see also, *State Savings Bank v. Watts* (Mar. 4, 1997), Franklin App. No. 96AP-809; *Bank One of Columbus v. Might* (June 15, 1982), Franklin App. No. 82AP-86.
[49] Fairfield App. No.2004-CA-00054, 2004-Ohio-6967

7

of a legally binding agreement because the credit card agreement created one. The production of monthly statements alone can demonstrate use of the credit card for purchases and balance transfers; and by its use, constitutes a binding contract between the user and the issuer.[50]

Attached to Defendant's Answer are the complete account histories of Hodson's two Capital One credit card accounts,[51] which exhibit both his use of the credit card, as well as payment histories on each account. Further attached to the complaint, and attached hereto, are the online applications Hodson filled out to open these lines of credit.[52] Because Hodson used these credit cards, he thereby consented to the terms and conditions relating thereto; inclusive of the aforementioned arbitration provisions.[53]

### 2.  *The instant claim is within the scope of the arbitration agreement.*

A court must assess whether the arbitration provision is applicable to each of the disputed claims because "unwilling parties" should not be forced "to arbitrate a matter they reasonably would have thought a judge, not an arbitrator, would decide."[54] District courts have the authority to decide whether an issue is within the scope of an arbitration agreement.[55] However, it is settled authority that any doubt regarding the applicability of an arbitration clause should be resolved in favor of arbitration.[56] If parties contract to resolve their disputes in arbitration rather than in the courts, a party may not renege on that contract absent the most extreme circumstances.[57] A district court's

---

[50] *Bank One, Columbus, N.A. v. Palmer,* supra, at 493, 579 N.E.2d 284; *Asset Acceptance LLC,* supra, at ¶ 48.
[51] See Answer, Exhibit A & B.  See also Fed.R.Civ.P. 10(c) ("A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes.").
[52] See Answer, Exhibit C; see also Exhibit D, attached hereto.
[53] Mentioned, *supra*, in the Statement of Facts.
[54] *First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 945 (1995).
[55] *Stout,* 228 F.3d at 714.
[56] *See, e.g., Moses H. Cone Memorial Hosp. v. Mercury Const. Corp.,* 460 U.S. 1, 24-25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983); *Ferro,* 142 F.3d at 932.
[57] *See Southland Corp. v. Keating,* 465 U.S. 1, 24, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984); *Dean Witter Reynolds, Inc. v. McCoy,* 995 F.2d 649 (6th Cir.1993).

duty to enforce an arbitration agreement under the FAA is not diminished when a party bound by the agreement raises claims arising from statutory rights.[58]

JB&R is a non-signatory to the aforementioned arbitration agreements. However, a non-signatory to an arbitration agreement may, on occasion, enforce the arbitration clause against a signatory. Among the various theories courts have used to evaluate claims involving enforcement of an arbitration clause by or against a non-party; include examining the express terms of the contract, and application of general agency theory.[59]

JB&R's conduct in the course of collecting the accounts for Capital One is explicitly included as part of the arbitration agreement. The definition of "we" as contained within the cardholder agreement includes any "authorized representative" as being party to the agreement.[60] In that JB&R is the law firm retained by Capital One to collect on each of these defaulted credit card accounts, it is an "authorized representative," party to the contract, and thereby subject to the contract's arbitration provision.

Secondly, under an agency theory, a non-signatory may seek to compel arbitration of claims against it that derive from conduct undertaken on behalf of a principal, who is a party to the arbitration agreement.[61] Defendant JB&R acted as attorney and agent[62] of Capital One in the underlying actions, in its effort to collect on the debts owed by Plaintiff, and should therefore be permitted to enforce the arbitration clause against Plaintiff.

---

[58] *See Shearson/American Express v. McMahon,* 482 U.S. 220, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987) (RICO); *Dorsey v. H.C.P. Sales, Inc.,* 46 F.Supp.2d 804, 808 n. 5 (N.D.Ill.1999) (TILA); *Goodwin v. Ford Motor Credit Co.,* 970 F.Supp. 1007 (M.D.Ala.1997) (TILA).
[59] See e.g., *Thomson-CSF, S.A. v. American Arbitration Assoc.,* 64 F.3d 773, 776 (2d Cir.1995) (courts recognize "five theories for binding nonsignatories to arbitration agreements: 1) incorporation by reference; 2) assumption; 3) agency; 4) veil-piercing/alter ego; and 5) estoppel.").
[60] Defendant's Answer, Exhibits A at p. 25, B at p. 13.
[61] *Arnold v. Arnold Corp.-Printed Communications For Business,* 920 F.2d 1269, 1282 (6th Cir. 1990).
[62] *Chatfield v. Michael, Davis, & Cramer,* Franklin App. No. 94 AP E01-23, unreported, 1994 WL 383833, at *3 (July 19, 1994) ("In Ohio, an attorney is generally regarded as the agent of his client and, as such, the rules of agency law apply to the attorney/client relationship.").

Hodson's claims are similarly governed by the arbitration provision.  The arbitration agreements that relate to each account for which JB&R filed suit on behalf of Capital One explicitly define one such claim that could be referred to binding arbitration, as arising out of "any billing or collections matters relating to your account."[63]  Because Hodson's instant claims relate to JB&R's alleged wrongful collection practices of each account; this action is explicitly contemplated as one that could be referred to binding arbitration.

### 3.  *Congress did not intend the FDCPA to be nonarbitrable.*

The third factor to be considered when deciding whether to stay proceedings in favor of arbitration, *i.e.,* whether Congress intended any federal statutory claims to be nonarbitrable, presents no barrier to arbitration in this case; as courts have found FDCPA claims to be appropriate for arbitration.[64]  Similarly, claims filed under the CSPA are routinely subject to arbitration proceedings.[65]

### 4.  *The entire claim is subject to the arbitration provision; such that there are no claims that would necessitate a stay in this forum.*

Where the court concludes that some, but not all, of the claims in the action are subject to arbitration, it must determine whether to stay the remainder of the proceedings pending arbitration.  This factor similarly presents no barrier to arbitration.  Hodson's claims under the CSPA and the FDCPA present identical factual allegations.  Thus, was this Court to find one claim subject to arbitration – it would necessarily be compelled to find both subject to arbitration.  There is therefore

---

[63] Defendant's Answer, Exhibits A & B.
[64] *See Smith v. Steinkamp,* No. IP01-1290, 2002 WL 1364161 (S.D.Ind. May 22, 2002) (granting defendants' motion to compel arbitration of FDCPA claim arbitration of FDCPA claim), *aff'd ,* 318 F.3d 775 (7 Cir.2003); *Goetsch v. Shell Oil Co.,* 197 F.R.D. 574 (W.D.N.C.2000) (same); *In re Taylor,* 260 B.R. 548 (Bankr.M.D.Fla.2000) (same).
[65] *Pilz v. Ford Motor Co.*, Stark App. No. 2006 CA 00737, unreported, 2007 WL 1545237 (May 29, 2007); *First Merit Bank, NA v. Crouse*, Lorain Capp. No. 06 CA 008946, unreported, 2007 WL 1461173.

no need for this Court to consider whether it should stay any portion of this action; while compelling the remainder to arbitration.

### III. Conclusion

This Court should stay the instant proceedings and compel the instant matter to binding arbitration, as it is a matter that relates to collection efforts relating to two of Plaintiff's Capital One Accounts, between two parties governed thereof.

                                      Respectfully Submitted:

                                      /s/ R. Glenn Knirsch
                                      R. Glenn Knirsch, SCR#0080770
                                      Javitch, Block, & Rathbone LLP
                                      1100 Superior Ave., 19th Floor
                                      Cleveland, Ohio 44114
                                      Ph:    (216) 623-0000 ex. 3088
                                      Fax:   (216) 525-4962
                                      E-mail: gknirsch@jbandr.com
                                      Attorney for Defendant,
                                      Javitch, Block, & Rathbone LLP

**PROOF OF SERVICE**

I hereby certify that on August 2, 2007 a copy of the foregoing was filed electronically in accordance with the Court's Electronic Filing Guidelines.  Notice of this filing will be sent to the following: Blake Owen Brewer, Esq., Blake Owen Brewer Co., LPA, 4807 Rockside Road, Suite 400, Independence, OH 44131, by operation of the court's electronic filing system. Parties may access this filing through the court's system.

/s/ R. Glenn Knirsch
R. Glenn Knirsch, SCR#0080770
