IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| Jerome R. Hodson, | ) | CASE NO.:1:07CV 02085 |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | JUDGE: O' Malley |
| | ) | |
| | ) | MAGISTRATE: Baughman |
| Javitch, Block, & Rathbone, | ) | |
| | ) | |
| Defendant. | | |

**DEFENDANT'S REPLY IN SUPPORT OF
ITS MOTION TO COMPEL ARBITRATION**

Hodson seeks to avoid the arbitration agreement to which he agreed with two separate arguments: first, that the arbitration clause is unconscionable; and second, that Defendant Javitch, Block, & Rathbone waived its right to have those claims brought in arbitration. Hodson's assertions are misapplied for several reasons.

First, this arbitration agreement is not an "adhesion" contract, as Hodson alleges. To be considered an "adhesion contract," and therefore unconscionable, it is a cornerstone requirement that the signer was unable to procure necessities, such as an automobile or medical services, from any seller without agreeing to a similar provision. Simply put, the challenging party had no meaningful choice but to accept the terms as proposed. Because the credit card industry enjoys a market flooded with options; Hodson should be hard pressed to argue that he had no choice but to accept these particular credit card terms under the circumstances. He could easily have agreed to the terms proposed by one of Capital One's competitors which may have had terms and conditions far more favorable than those proposed by Capital One.

Further, JB&R has done nothing to waive its rights to arbitrate. Contrary to his assertions otherwise, JB&R has never filed suit against Plaintiff in a municipal court, never filed a disposition

1

on its claims against Plaintiff; nor has it effected a wage garnishment on its own behalf. In fact, prior to this case, Hodson and JB&R have never been parties to the same law suit.

Hodson confuses parties in these matters – JB&R merely acted as the law firm retained by Capital One to collect two outstanding debts; and only appeared in the Cleveland Municipal Court in its representative capacity as attorneys. As such, **JB&R never asserted ANY rights of its own** in the underlying municipal court suits; **Capital One did**. Therefore, JB&R did nothing to waive its own right to assert arbitration.

A.      **The arbitration clause is not unconscionable**

This Court must begin its analysis with the well-settled principle that a person who is competent to contract and who signs a written document without reading it is bound by its terms and cannot avoid its consequences.[1] A person of ordinary mind cannot be heard to say that he was misled into signing a paper which was different from what he intended, when he could have known the truth by merely looking when he signed.[2] The legal and common-sensical axiom that one must read what one signs survives this case.[3] This Court is therefore bound by the premise that Hodson read the three page terms and conditions of the cardholder agreements before deriving the benefit and use of each credit card; inclusive, of course, of the subject arbitration agreements.

Unconscionability is generally recognized to include an absence of meaningful choice on the part of one of the parties to a contract, combined with contract terms that are unreasonably favorable to the other party.[4] "Unconscionability thus embodies two separate concepts: (1) unfair and unreasonable contract terms, *i.e.,* "substantive unconscionability," and (2) individualized

---

[1] *Hook v. Hook* (1982), 69 Ohio St.2d 234, 238, 431 N.E.2d 667, citing *Kroeger v. Brody* (1936), 130 Ohio St. 559, 566, 200 N.E. 836.
[2] *McAdams v. McAdams* (1909), 80 Ohio St. 232, 240-241, 88 N.E. 542, 544. See, also, *Upton v. Tribilcock* (1875), 91 U.S. 45, 50, 23 L.Ed. 203, 205 ('It will not do for a man to enter into a contract, and, when called upon to respond to its obligations, to say that he did not read it when he signed it, or did not know what it contained. If this were permitted, contracts would not be worth the paper on which they are written.')
[3] Id. at 503.
[4] *Collins v. Click Camera & Video, Inc.*, 621 N.E.2d 1264, 86 Ohio App.3d 826 (1993).

circumstances surrounding each of the parties to a contract such that no voluntary meeting of the minds was possible, *i.e.,* "procedural unconscionability," or, in the words of Professor Leff, "bargaining naughtiness.""[5] "One must allege and prove a "quantum" of both prongs in order to establish that a particular contract is unconscionable."[6]

However, courts should invoke the unconscionability doctrine cautiously in order to avoid "lead[ing] inexorably to individual irresponsibility, social instability and multifarious litigation."[7] "On the whole, judges have been cautious in applying the doctrine of unconscionability, recognizing that the parties often must make their contract quickly [and] that their bargaining power will rarely be equal."[8]

**1.    The arbitration clauses are not substantively unconscionable.**

Substantive unconscionability essentially raises the issue of whether or not the terms of the agreement are fair. In support of his contention that the arbitration clauses are unconscionable, Hodson essentially raises three points: first, that the arbitration clauses waive his constitutional right to a trial by jury; second, that he cannot participate in a "class action lawsuit;" and third, that he cannot later successfully challenge the arbitration clause.[9] In that these are the only terms upon which Hodson claims substantive unconscionability, each will be discussed in turn.

**a.    *Waiver of constitutionally guaranteed trial by jury.*[10]**

Public policy favors and encourages arbitration because it unburdens crowded dockets and is relatively fast and inexpensive.[11] By agreeing to arbitrate a claim, a party does not forgo the

---

[5] *Id.* at 834.
[6] *Id.*
[7] *Blount v. Smith*, 12 Ohio St.2d 41, 47, 231 N.E.2d 301, 306.
[8] Farnsworth, Contracts (2 Ed.1990) 335, Section 4.28
[9] Doc 7 – Plaintiff's Brief in Opposition to Motion to Compel Arbitration, at p. 3.
[10] Doc 7 – Plaintiff's Brief in Opposition to Motion to Compel Arbitration, at p. 3.

3

substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial forum.[12] The parties trade the procedures and opportunity for review of the courtroom for the simplicity, informality, and expedition of arbitration.[13] By enacting arbitration statutes, the legislature did not take away a person's constitutional right to a trial by jury.[14] The only way a litigant's right to a jury trial can be taken away under arbitration statutes is if he or she agrees to waive it under the terms of the contract.[15] Therefore, arbitration is constitutional, as a person who has a constitutional right may validly waive it. Because the arbitration agreements contained in Capital One's cardholder agreements constituted a major and conspicuous portion thereof, and Hodson's use of the card constitutes his agreement to those terms; he has affirmatively waived his constitutional right to a trial by jury.

**b.    *Participation in a class action.*[16]**

**A**rbitration clauses that manifestly prohibit class actions have been found to be substantively unconscionable.[17] However, if this court wishes to construe this particular portion of the arbitration clause as unenforceable; such a decision should have no effect on the remainder of the arbitration clause; especially in light of the fact that the provision is inapplicable to this individual action.

Further, the arbitration clause specifically states: "If any portion of the Arbitration Provision is deemed invalid or unenforceable, the remaining portions of the Arbitration Provision shall nevertheless remain valid and in force."[18] The Ohio Supreme Court recently held very similar language to be valid; and maintained that the remaining portion of the arbitration clause should enjoy the full force and effect of law:

---

[11] *Schaefer v. Allstate Insurance Company* (1992), 63 Ohio St.3d 708, 712, 590 N.E.2d 1242.
[12] *Mitsubishi Motors Corporation v. Soler Chrysler-Plymouth* (1985), 473 U.S. 614, 628, 105 S.Ct. 3346, 87 L.Ed.2d 444.
[13] *Id.*
[14] *Branhan v. Cigna Healthcare of Ohio, Inc.* (August 6, 1996), Ross Appellate No. 95CA2156, unreported, rev.'d on other grounds (1998), 81 Ohio St.3d 388, 692 N.E.2d 137.
[15] *Id.*
[16] Doc 7 – Plaintiff's Brief in Opposition to Motion to Compel Arbitration, at p. 3.
[17] *See Eagle,* at 178.
[18] Answer, Exhibit A at 27, Exhibit B at 15.

4

> The arbitration agreement in this case expressly provides, "Should any provision of this Agreement be found to be unenforceable, such portion will be severed from the Agreement and the remaining portions shall remain in full force and effect." We presume the intent of the parties from the language employed in the contract. Clearly, the parties contemplated and provided for severing a provision that was unenforceable and giving effect to the remaining provisions.
>
> [The plaintiff] contends that Section 10B transformed the agreement into one that requires only nonbinding alternative dispute resolution. She argues that severing is not a proper remedy because it would fundamentally alter the nature of the entire contract from a nonbinding arbitration process into binding arbitration, a condition to which she had not agreed. According to [the plaintiff], the broad authority for judicial review of the arbitrator's decision countermands the agreement's references to final and binding arbitration, so severing this provision would rewrite the agreement from nonbinding dispute resolution to binding arbitration.
>
> We disagree. The plain language of the agreement evidences that the parties intended to arbitrate their disputes to a final and binding resolution. The agreement is entitled "Arbitration Agreement." It contains numerous references to the finality of the arbitrator's decision, providing, "[e]mployees give up their right to sue the Company, and the Company is giving up its right to sue employees in court." The parties agreed that "any legal claim or dispute * * * will be submitted solely to a private, impartial arbitrator * * * for a final and binding decision." It also states that the arbitrator's decision "shall then be final and conclusive upon the parties."[19]

Hence, should this court object to the clause regarding class action suits, Ohio law dictates that such provision should be severed from the rest of the arbitration agreement, and the remaining agreement given the full force and effect of law.  Because the instant action is not a class action, but brought individually by Hodson, severing the class action portion therefrom would not at all affect JB&R's contractual right to compel these proceedings to arbitration.

**c.        *The consumer cannot later successfully challenge the arbitration clause.*[20]**

Hodson's assertion is not entirely accurate.  The arbitration provision states, explicitly, that:

> [t]he arbitrator's decision will be final and binding after fifteen days **unless** you or we seek an appeal of the award by making a written request to the Administrator.  The appeal panel which will consist of three arbitrators, will consider all factual and legal issues anew, will conduct the appeal in the same manner as the initial arbitration and will make decisions based on the vote of the majority.  The panel's decision will be

---

[19] *Ignazio v. Clear Channel Broadcasting, Inc.*, 113 Ohio St. 3d 276, 278-9, 805 N.E.2d 18, 20-21 (2007).
[20] Doc 7 – Plaintiff's Brief in Opposition to Motion to Compel Arbitration, at p. 3.

5

final and binding. Any final decision of the arbitrator or of the appeal panel is
subject to judicial review only as set forth under the FAA.[21]

Further, the fact that the arbitration decision will be final and determinative of the issues is entirely consistent with Ohio law.[22] Otherwise, the very purpose of arbitration - which is to bring a speedier, less costly alternative to protracted litigation in the overwhelmed Court system - would be rendered a chimera, and would result in duplicative proceedings.

### 2. The arbitration clauses are not procedurally unconscionable

"Procedural unconscionability involves those factors bearing on the relative bargaining position of the contracting parties, *e.g.,* 'age, education, intelligence, business acumen and experience, relative bargaining power, who drafted the contract, whether the terms were explained to the weaker party, whether alterations in the printed terms were possible, whether there were alternative sources of supply for the goods in question.'"[23] Hodson presents several factors which he states are indicia of procedural unconscionability.

#### a. *"Capital One drafted the arbitration clause"*[24]

It is undisputed that Capital One drafted the arbitration agreement; and that such agreement was provided to Hodson on a preprinted form. While these two factors are true, and might fall in favor of making an agreement an "adhesion contract" as implied by Hodson,[25] the true crux of any

---

[21] Answer, Exhibit A at 27, Exhibit B at 15.
[22] Absent a clear showing of fraud, misconduct, or some other irregularity rendering the award unjust, inequitable, or unconscionable, the arbitration is the final judgment of both law and facts and will not be set aside by a trial court. *Staff v. State Farm Mutual Ins. Co.* (1993), 87 Ohio App.3d 440, 443, 622 N.E.2d 434 quoting *Good Year v. Local Union No. 200* (1975), 42 Ohio St.2d 516, 522, 330 N.E.2d 703; *Menardi v. Petrigalla* (1983), 11 Ohio App.3d 9, 11, 462 N.E.2d 1246. Further, appellate review of arbitration awards is confined to the judicial order confirming, modifying, correcting or vacating an arbitration award. *Sparks v. Barnett* (1992), 78 Ohio App.3d 448, 450, 605 N.E.2d 408 quoting *Lockhart v. American Res. Ins. Co.* (1981), 2 Ohio App.3d 99, 101, 440 N.E.2d 1210, 1213.
[23] *Collins*, at 834.
[24] Doc 7 – Plaintiff's Brief in Opposition to Motion to Compel Arbitration, at p. 3.
[25] Doc 7 – Plaintiff's Brief in Opposition to Motion to Compel Arbitration, at p. 2 ("it was presented as a 'take it or leave it' basis.")

6

adhesion contract is lack of any realistic choice on the part of the consumer.[26] Courts generally construe a contract as an "adhesion" contract where a consumer has no choice to modify terms, where forced into the contract from the surrounding circumstances,[27] and where the consumer could not get the goods or services elsewhere.[28]

Hodson's theory necessarily must include the premise that Capital One forced this contract upon him, in circumstances where he had no choice but to accept them because the goods and services provided by Capital One were necessary and could be found nowhere else. But, these contracts surround credit cards, of which there are at least dozens of choices to select from.[29] Hodson claims that "the arbitration clause was presented in such a way that the Plaintiff had no opportunity to reject the clause."[30] In fact, Hodson did have an opportunity to reject the clause – he was free to reject Capital One's offer, and could have selected a card from one of any number of Capital One's competitors with more favorable terms.[31]

---

[26] *Nottingdale Homeowners' Assn., Inc. v. Darby* (1987), 33 Ohio St.3d 32, 37, 514 N.E.2d 702, fn. 7

[27] *See, e.g. Battle v. Bill Swad Ceverolet, Inc.*, 140 Ohio app.3d 2185, 191-192 (2000) ("Assuming appellee's allegations are true, a company with far superior knowledge of the situation concealed very damaging information about its product from a far less knowledgeable consumer in a transaction which is among the most expensive transactions engaged in by the average consumer. Further, the product purchased is of critical importance to the consumer. If the vehicle purchased fails to perform its basic function of providing reliable transportation, the impact on the consumer can be devastating, especially if the consumer is not a wealthy person. **Transactions involving modern-day necessities such as transportation deserve especially close scrutiny before an arbitration clause is enforced by the courts.**").

[28] *See e.g Marcinko v. Palm Harbor Home, Inc.*, Pike App. No. 01CA677, unreported, 2002 WL 1428658, at *3-4 ("appellants have failed to submit any kind of evidence purporting to show that they had no choice as to the terms of the contract or the arbitration provision. There is no evidence that the arbitration agreement *had* to be signed in order for the purchase to take place. They have not shown that they were in any way forced into the contract or that they could not have purchased a manufactured home from someone else.").

[29] *Larned v. First Chicago Corp.*, 264 Ill.App.3d. 697, 700 ("In the present case, the Visa card agreement is not an adhesion contract since Larned freely chose to obtain this Visa card from among a number of other credit cards offering similar benefits. Although Larned maintains that only a limited number of credit card issuers offer frequent flyer miles, **the fact other credit card companies do provide similar benefits demonstrates that he did not lack meaningful choice in obtaining this Visa card**.").

[30] Doc 7 – Plaintiff's Brief in Opposition to Motion to Compel Arbitration, at p. 2 ("it was presented as a 'take it or leave it" basis.")

[31] *Homa v. American Exp. Co.*, --- F.Supp.2d ---, 2007 WL 1585168, at *8 (D.N.J. 2007) ("First, although the boilerplate terms of the Cardmember Agreement, including the class-arbitration waiver, were presented in the context of a take-it-or-leave-it transaction, Plaintiff was free to reject Defendants' offer and open a credit account with one of any number of credit card issuers. Further, Plaintiff had ample opportunity to read and understand the terms of the Cardmember Agreement, including the class-arbitration waiver, which appeared in large bold font, prior to opening his Blue Cash Card account. Thus, it cannot be said that Plaintiff lacked a meaningful choice or was 'compelled to accept the terms of the agreement.'").

Further, the fact that a contract contains an arbitration clause that is pre-printed does not, standing alone, demonstrate procedural unconscionability.[32] Instead, "[t]he crucial question is whether 'each party to the contract, considering his obvious education or lack of it, [had] a reasonable opportunity to understand the terms of the contract, or were the important terms hidden in a maze of fine print * * *?'"[33] Plaintiff only asserts that he did not understand the arbitration process - not that the terms were hidden, which they weren't[34], nor that he lacked a reasonable opportunity to understand such terms, which he has failed to allege in his affidavit. As such, this Court cannot assume that he lacked such an opportunity to understand the terms to which he agreed whilst benefiting from the use of the credit cards.

**b.      "*Capital One failed to adequately explain the arbitration clause.*"[35]**

The Ohio Supreme Court has held that there is no requirement that an arbitration clause be explained orally to a party prior to signing when the provisions at issue were not in fine print, were not hidden from the party, were part of an industry standard and were not misrepresented to the signatory.[36]

The arbitration clauses were not hidden, nor were they found in fine print. The cardholder agreements consist of three pages, one of which encompasses the actual arbitration agreement.[37] Further, the top of the third page states in bold, uppercase letters:[38]

**ARBITRATION AGREEMENT**

---

[32] See *Eagle,* supra, at 173, ¶ 56, 809 N.E.2d 1161
[33] *Ohio Univ. Bd. of Trs. v. Smith* (1999), 132 Ohio App.3d 211, 724 N.E.2d 1155.
[34] It again bears mentioning, that of the three pages of the terms and conditions, one entire page is devoted to the arbitration agreement. Further, at the bottom of page two of the terms and conditions, in bold, upper case font is found the following: "**ARBITRATION. PLEASE SEE ENCLOSED 'ARBITRATION PROVISION.' PLEASE NOTE THAT THE TERMS INCLUDED IN THE ARBITRATION PROVISION ARE PART OF YOUR CUSTOMER AGREEMENT.**"
[35] Doc 7 – Plaintiff's Brief in Opposition to Motion to Compel Arbitration, at p. 3.
[36] *ABM Farms, Inc. v. Woods* (1998), 81 Ohio St.3d 498, 503, 692 N.E.2d 574.
[37] See Answer, Exhibit A at 25-28, Exhibit B at 13-16.
[38] Answer, Exhibit A at 27, Exhibit B at 15.

**IMPORTANT: THIS ARBITRATION PROVISION IS PART OF YOUR CUSTOMER AGREEMENT**

Further, Plaintiff has failed to point to any portion of the agreement where Capital One misrepresented the terms of the agreement. He has also failed to allege that an arbitration clause contained within a cardholder agreement is not part of the industry norm.

c.   *The Plaintiff was not represented by Counsel.*[39]

Plaintiff fails to provide any reason for why he did not seek advice from counsel before he agreed to terms he claims to have not understood.[40] As stated by the Ninth District court of Appeals of Ohio, Plaintiff "could have sought out professional advice, either from an attorney or an accountant, prior to signing the contract. [Capital One] was not under obligation to explain the arbitration clause, and the company was not remiss when it failed to suggest that each Appellant read the contract carefully or obtain counsel."[41] In that it appears that Hodson did not take the opportunity to have anyone explain to him the terms of the agreement prior to signifying his assent thereto by his use of the credit cards, this Court should not allow him to now say that he was ill informed, and not bind him to those terms contained within.

d.   *"Plaintiff has no experience whatsoever in arbitration."*[42]

Hodson claims that he "had no understanding of what an arbitration agreement was in 2004 when [he] applied for these cards and did not knowingly agree to submit to arbitration by applying for a credit card." However, a person who signs a contract without making a reasonable effort to know its contents cannot, in the absence of fraud or mutual mistake, avoid the effect of the

---

[39] Doc 7 – Plaintiff's Brief in Opposition to Motion to Compel Arbitration, at p. 3.
[40] Doc 7 – Plaintiff's Brief in Opposition to Motion to Compel Arbitration, Exhibit A, at ¶ 5.
[41] *English v. Cornwell Quality Tools Co.*, Inc., Summit App. No. 22578, unreported, 2005 WL 3556281, at *5 (Dec. 30, 2005).
[42] Doc 7 – Plaintiff's Brief in Opposition to Motion to Compel Arbitration, at p. 3-4.

9

contract.[43] "This rule is applicable **even in cases where the person seeks to avoid the effect of the contract by citing ignorance of the contract's contents or a failure to understand those contents**."[44]

Plaintiff only states that he did not understand the arbitration process. He fails to explain why, if so confused, he never sought assistance from a Capital One representative to explain such terms, why he did not look on the internet for guidance,[45] or why he did not seek counsel from an attorney to explain such terms. Further, he does not allege that the consummation of the contract was induced by fraud or mutual mistake. Given all of the above, this Court should not assume that Hodson lacked any real choice in agreeing to the contract; nor that he was hard pressed to agree thereto, such that he never had time to truly understand the contract's terms.

### B. JB&R did not waive its rights to arbitrate

It has been held that a defendant waived the right to arbitration of a particular dispute where the defendant delayed in asserting or demanding arbitration coupled with participating in the action generally, filing an answer containing a counterclaim, or engaging in more than one specific act of participation in the action.[46] Here, JB&R has done nothing to waive its right to arbitrate the claims brought against it.

First, JB&R asserted "arbitration" as an affirmative defense in its answer.[47] Secondly, and contrary to Hodson's assertions, this complaint had been pending for three weeks when JB&R

---

[43] *Campco Distrib. v. Fries* (1987), 42 Ohio App.3d 200, 203, 537 N.E.2d 661, 664-665, quoting *Indep. Directory Corp. v. Vandenbrock* (Ohio App.1950), 43 O.O. 229, 230-231, 57 Ohio Law Abs. 313, 316-317, 94 N.E.2d 228, 230.
[44] *Pippin v. M.A. Hauser Ent., Inc.*, 111 Ohio App.3d 557, 564, 676 N.E.2d 932, 937 (1996) (emphasis added); *citing Muskovitz v. Sun Underwriter's Agency of Sun Ins. Co.* (1913), 3 Ohio App. 422, 424. See, also, *McAdams v. McAdams* (1909), 80 Ohio St. 232, 241, 88 N.E. 542, 544-545.
[45] Especially in light of the fact that he applied for the card online.
[46] 98 A.L.R.3d 767, Defendant's participation in action as waiver of right to arbitration
[47] Doc 4 – Answer, at ¶ 12 ("Plaintiff's claims are subject to arbitration agreements; copies of which are attached hereto and incorporated herein as Exhibit A, Exhibit B, and Exhibit C.")

asserted its right to arbitrate; not fourteen months as alleged by Hodson.[48] And third, in that three week period, JB&R filed three documents: its answer, a Privacy Act Reference Index required under local rules, and this Motion to Compel arbitration.[49]

True, "[a] party acts inconsistently with **its** right to arbitrate if the party 'substantially invokes the litigation machinery before asserting its arbitration right.'"[50] However, JB&R has never been a party to an action against Hodson - Capital One, its client, has. Therefore JB&R has done nothing inconsistent with **its own** right to arbitrate; it has acted on behalf of Capital One, which acts could be argued to be inconsistent with **Capital One's** right to arbitrate.

Hodson is either confused as to JB&R's relation to the two underlying suits in Cleveland Municipal Court, or is seeking to muddy the distinction between attorney and client – thereby seeking to fit both JB&R, the attorney, and Capital One, its client, in the same shoe. JB&R never filed two civil lawsuits against Hodson; Capital One did.[51] JB&R did nothing to imply its own independent and affirmative decision to waive the arbitration clause; Capital One did.

Further, the arbitration clause states the following as to waiver: "[i]f you or we do not elect arbitration or otherwise enforce this Arbitration Provision in connection with any particular Claim, you or we will not waive any rights to require arbitration in connection with that or any other claim."[52] Hence, even if Capital One's decision to forego arbitration in the state court actions were imputed to its attorney JB&R; its right to arbitrate the instant matter has still not been waived.

This Court should further understand the implications of Plaintiff's argument. He now argues that by filing motions and other papers within a municipal court proceeding on behalf of a client; the law firm thereby waives any contractual right to arbitration that it might have had before.

---

[48] Doc 7 – Plaintiff's Brief in Opposition to Motion to Compel Arbitration, at p. 5
[49] See Docket.
[50] Doc 7 – Plaintiff's Brief in Opposition to Motion to Compel Arbitration, at p. 5; citing *Lewallen v. Green Tree Servicing LCC*.
[51] Just as undersigned counsel cannot say that Blake Owen Brewer, Esq. is party to this lawsuit; Jerome R. Hodson and JB&R are the only two parties thereto.
[52] Answer, Exhibit A at 27, Exhibit B at 15.

11

Such an argument implies that JB&R should have disregarded its own client's wishes in bringing a suit in court; and should have instituted arbitration proceedings in the hopes of saving a future right to arbitrate based on its conduct during the litigation. Such an argument poses a clear conflict of interest at all times for any law firm.

**C.  CONCLUSION**

Wherefore, based on the foregoing, as well as those arguments contained within JB&R's Motion to Compel Arbitration, this Court should stay the instant proceedings and compel this matter to arbitration.

Respectfully Submitted:

/s/ R. Glenn Knirsch
R. Glenn Knirsch, SCR#0080770
Javitch, Block, & Rathbone LLP
1100 Superior Ave., 19th Floor
Cleveland, Ohio 44114
Ph:    (216) 623-0000 ex. 3088
Fax:   (216) 525-4962
E-mail: gknirsch@jbandr.com
Attorney for Defendant,
Javitch, Block, & Rathbone LLP

**PROOF OF SERVICE**

I hereby certify that on August 13, 2007 a copy of the foregoing was filed electronically in accordance with the Court's Electronic Filing Guidelines.  Notice of this filing will be sent to the following: Blake Owen Brewer, Esq., Blake Owen Brewer Co., LPA, 4807 Rockside Road, Suite 400, Independence, OH 44131, by operation of the court's electronic filing system. Parties may access this filing through the court's system.

                 /s/ R. Glenn Knirsch
                 R. Glenn Knirsch, SCR#0080770